1  STEVEN W. PITE (CA SBN 157537)
   DAVID E. McALLISTER (CA SBN 185831)
2  KATHERINE L. JOHNSON(CA SBN 259854)
   PITE DUNCAN, LLP
3  4375 Jutland Drive, Suite 200
   P.O. Box 17933
4  San Diego, CA 92177-0933
   Telephone: (858) 750-7600
5  Facsimile:  (619) 590-1385

6

7  Attorneys for  NATIONAL CITY BANK

8

9                       UNITED STATES BANKRUPTCY COURT
                  NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION
10

| 11 | In re | Case No.  09-50324 |
|---|---|---|
| 12 | MICHAEL EUGENE DAWSON AND JAMIE MARIE DAWSON, | Chapter  13 |
| 13 | | |
| 14 | Debtor(s). | STIPULATION RE: AVOIDANCE OF LIEN |
| 15 | | |

16      This Stipulation is entered into by and between MICHAEL EUGENE DAWSON AND

17  JAMIE MARIE DAWSON (hereinafter referred to as "Debtors"), by and through their attorney of

18  record, Brian M. Kandel; and NATIONAL CITY BANK (hereinafter referred to as "Creditor"), by

19  and through its attorney of record Pite Duncan, LLP.

20                                **RECITALS**

21      A.      Debtors are the makers of a Note in favor of Creditor dated August 31, 2005, in the

22  original principal amount of $61,450.00 ("Note"), which is secured by a Second Deed of Trust

23  encumbering the real property at 370 Eleana Dr, Ben Lomond, CA 95005 (the "Subject Property").

24  The Subject Property is more fully described in the Deed of Trust attached hereto as exhibit "A",

25  which is incorporated herein by this reference.  The Note and Second Deed of Trust are collectively

26  referred to hereinafter as the "Subject Loan."

27  /././

28  /././

B.  On or about January 20, 2009, Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, and were assigned Case No. 09-50324.

C.  On or about August 14, 2009, Debtors filed a Motion to Avoid Lien praying that the court find Creditor's Second Deed of Trust encumbering the Subject Property be avoided and that its claim be paid as an unsecured.

**FOR PURPOSES OF THE DEBTORS CHAPTER 13 PLAN ONLY THE PARTIES HEREBY STIPULATE AND AGREE TO AN ORDER AS FOLLOWS:**

1.  Creditor's claim shall be allowed as a non-priority general unsecured claim. Creditor shall file a Proof of Claim listing its claim as unsecured to be paid in accordance with the Debtors' Plan;

2.  The avoidance of Creditor's Second Deed of Trust is contingent upon the Debtors' completion of their Chapter 13 plan and the Debtors' receipt of a Chapter 13 discharge;

3.  Upon receipt of the Debtors' Chapter 13 discharge and completion of their Chapter 13 Plan, this Stipulation and the Order to follow may be recorded by the Debtors with the Santa Cruz County Recorder's Office;

4.  Creditor shall retain its lien for the full amount due under the Subject Loan in the event of either the dismissal of the Debtors' Chapter 13 case or the conversion of the Debtors' Chapter 13 case to any other Chapter under the United States Bankruptcy Code;

5.  In the event that the holder of the first lien on the Subject Property forecloses on its security interest and extinguishes Creditor's Second Deed of Trust prior to the Debtors' completion of their Chapter 13 Plan and receipt of a Chapter 13 discharge, Creditor's lien shall attach to the surplus proceeds of the foreclosure sale for the full amount of the Subject Loan balance at the time of the sale; and

/././
/././
/././
/././

6. Each party shall bear their own attorneys' fees and costs incurred in the present stipulation in bankruptcy case number 09-50324.

IT IS SO STIPULATED:

Dated: 8.18.09      By: _____
                        BRIAN M. KANDEL
                        Attorney for Debtors

PITE DUNCAN, LLP

Dated: 8/25/09      By: _____
                        KATHERINE L. JOHNSON
                        Attorney for Creditor

- 3 -

Case: 09-50324    Doc# 30    Filed: 08/25/09    Entered: 08/25/09 11:50:14    Page 3 of 10

```
RRI BLACKWELL, NATIONAL CITY BANK    2005-006454
ksville, OH 44141
                                      Recorded         | REC FEE   27.00
    :ording to:                       Official Records |
NCB, CLS BRECKSVILLE                  County Of        |
LOCS, LOCATOR 7120                    SANTA CRUZ       |
P.O. BOX 5570                         GARY E. HAZELTON |
CLEVELAND, OH 44101                   Recorder         |
                                      CAROL D. SUTHERLAND |
                                      Assistant        | JEB
                                      11:30AM 13-Sep-2005 | Page 1 of 7
```



——————— State of California ——————————————————— Space Above This Line For Recording Data ———————

## DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is August 31, 2005
   and the parties, their addresses and tax identification numbers, if required, are as follows:
   TRUSTOR: MICHAEL DAWSON and JAIME DAWSON Husband and Wife/as Joint Tenants
                                         JAMIE
   370 ELEANA DR, BEN LOMOND, California, 95005

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
   TRUSTEE: NATIONAL CITY BANK

   DAWSON
   MORTGAGEDEED

   LENDER: NATIONAL CITY BANK

   50674  XEXPF36

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

   The property is located in Santa Cruz ................................................. at ....................................
                                          (County)
   370 ELEANA DR .................. , BEN LOMOND ................. , California 95005
       (Address)                          (City)                                (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ......61,450.00......... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

Maturity Date: 8/31/2035

CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)     (page 1 of 6)
Experts® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP-C465(CA) (0403).01                VMP Mortgage Solutions, Inc. (800)521-7291

EXHIBIT A

Case: 09-50324   Doc# 30   Filed: 08/25/09   Entered: 08/25/09 11:50:14   Page 4 of 10

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

5. **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the

proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

   **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

   **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

   **Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

   **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

   At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

Exper̄a® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP-C465(CA) (0409).01

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Exßere® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
-C465(CA) (0403).01

Case: 09-50324    Doc# 30    Filed: 08/25/09    Entered: 08/25/09 11:50:14    Page 7 of 10

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

18. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Assignment of Leases and Rents    ☐ Other ...............................................................

22. ☐ **ADDITIONAL TERMS.**

Express® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP-C465(CA) (0403).01

(page 5 of 6)

Case: 09-50324    Doc# 30    Filed: 08/25/09    Entered: 08/25/09 11:50:14    Page 8 of 10

23. **REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded ............................ , .......... , in book .......................... page ............................ , records of .................................... County, (or filed for record with recorder's serial number ............................ , .................................... County) California, executed by ........................................................ as trustor (or mortgagor) in which ........................................................ , is named as beneficiary (or mortgagee) and ........................................................ as trustee be mailed to:

Name ........................................................ at

Address ........................................................ .

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature on behalf of the requester named above:

Signature ........................................................

(Include the requester's name, by the signer among those acknowledging below, or use a separate acknowledgment form.)

SIGNATURES: By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

| | | | |
|---|---|---|---|
| [signature] | 9/6/05 | Jamie Dawson | 9/6/05 |
| (Signature) MICHAEL DAWSON | (Date) | (Signature) ~~JAIME~~ DAWSON JAMIE JUD | (Date) |

ACKNOWLEDGMENT:

STATE OF CALIFORNIA , COUNTY OF SANTA CRUZ } ss.

On this 6th day of SEPTEMBER 2005 before me A. DOUGLAS ANDREWS a notary public, personally appeared MICHAEL DAWSON & JAMIE DAWSON

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

A. DOUGLAS ANDREWS
Commission # 1479013
Notary Public - California
Santa Cruz County
My Comm. Expires Mar 26, 2008

(Seal)

Signature [signature]

Name (typed or printed) A. DOUGLAS ANDREWS

My commission expires: MARCH 26, 2008

**REQUEST FOR FULL RECONVEYANCE**

To Trustee: The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of .................................... County, State of California, in book ...................... , page .......... of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ........................................ ........................................................

Assessor's Identification Number

Expere® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP-C465(CA) (0403).01

All that certain real property situated in the County of Santa Cruz, State of California, described as follows:

PARCEL ONE:

A PART OF LAND DESCRIBED IN THE DEED FROM RUTH S. GRAHAM TO JOHN N. JANSON ET UX, RECORDED JULY 27, 1962, IN VOLUME 1485, PAGE 266, OFFICIAL RECORDS OF SANTA CRUZ COUNTY, AND ALSO BEING A PART OF THE ZAYANTE RANCHO AND MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT AN IRON PIPE AT THE MOST WESTERN CORNER OF THE LAND CONVEYED TO CENTRAL SUPPLY COMPANY BY DEED RECORDED JULY 1, 1954, IN VOLUME 973, PAGE 233, OFFICIAL RECORDS OF SANTA CRUZ COUNTY; THENCE FROM SAID POINT OF BEGINNING ALONG THE SOUTHWESTERN BOUNDARY OF SAID LAND OF CENTRAL SUPPLY COMPANY, SOUTH 49° 13' EAST 125.00 FEET TO A STATION; THENCE LEAVING LAST MENTIONED BOUNDARY, SOUTH 40° 47' WEST 73.30 FEET TO A STATION ON THE NORTHEASTERN BOUNDARY OF ELEANA DRIVE, AS SHOWN ON THE RECORD OF SURVEY MAP OF LARITA OAKS, FILED SEPTEMBER 6, 1955, IN VOLUME 33 OF MAPS, AT PAGE 36, RECORDS OF SANTA CRUZ COUNTY; THENCE ALONG THE NORTHEASTERN BOUNDARY OF SAID DRIVE, NORTH 53° 14' 30" WEST 90.30 FEET TO AN IRON PIPE AT THE MOST WESTERN CORNER OF SAID LAND OF JANSON; THENCE ALONG THE NORTHWEST BOUNDARY OF SAID LAND OF JANSON, NORTH 17° 06' 30" EAST 86.96 FEET TO THE PLACE OF BEGINNING.

PARCEL TWO:

BEGINNING AT AN IRON PIPE AT THE MOST WESTERN CORNER OF THE LAND CONVEYED TO JOHN WM. PERRY, ET UX., BY DEED RECORDED OCTOBER 22, 1962 IN VOLUME 1502, PAGE 159, OFFICIAL RECORDS OF SANTA CRUZ COUNTY; THENCE SOUTH 36° 45' 30" WEST 25.0 FEET TO THE CENTERLINE OF ELEANA DRIVE AS SHOWN ON THE RECORD OF SURVEY MAP OF LARITA OAKS, FILED FOR RECORD IN VOLUME 33 OF MAPS, AT PAGE 36, RECORDS OF SANTA CRUZ COUNTY THENCE ALONG SAID CENTERLINE SOUTH 53° 14' 30" EAST 88 FEET MORE OR LESS TO A STATION FROM WHICH THE MOST SOUTHERN CORNER OF SAID LAND OF PERRY BEARS NORTH 40° 47' EAST; THENCE NORTH 40° 47' EAST 25 FEET, MORE OR LESS TO SAID CORNER AND THENCE NORTH 53° 14' 30" WEST 90.30 FEET TO THE PLACE OF BEGINNING.

APN: 072-277-02

MORTGAGEDEED_A

0674